**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENA SERVED** | ) |
| **ON STEPHEN K. BANNON** | ) |
| | )      **Case No. _____** |
| | ) |
| **CLYDE & CO., 1775 PENNSYLVANIA** | ) |
| **AVENUE, NW, SUITE 400, WASHINGTON,** | ) |
| **DC 20006** | ) |

**POINTS AND AUTHORITIES IN SUPPORT OF MOVANT'S CONSOLIDATED**
**(1) MOTION TO COMPEL COMPLIANCE WITH FED. R. CIV. P. 45 SUBPOENA FOR**
**TESTIMONY OR, ALTERNATIVELY, FOR FINDING OF CONTEMPT AND**
**RELATED RELIEF; AND (2) MOTION FOR EXPEDITED BRIEFING**

Movant Strategic Vision US, LLC ("Movant") seeks an order, pursuant to Fed. R. Civ. P.
37(a)(2), (a)(3)(B)(i) and (b)(1), compelling non-party Stephen K. Bannon to comply with a duly
issued, personally served Fed. R. Civ. P. 45 subpoena for testimony[1] in the action styled *Eastern
Profit Corporation Limited v. Strategic Vision US LLC,* Case No. 1:18-cv-02185-JGK-DCF,
pending in the United States District Court for the Southern District of New York.  Movant has
noticed the deposition for January 10, 2020,[2] and the Court should order Mr. Bannon to appear
as noticed.  Alternatively, the Court should find Mr. Bannon in contempt under Fed. R. Civ. P.
45(g) for failing to appear at his deposition noticed for November 22, 2019 without obtaining a
court order excusing his non-appearance, and the Court should order Mr. Bannon to appear for
the deposition on January 10, 2020, the deadline specially set for the Bannon deposition by the
issuing court, the Southern District of New York.

In compliance with L.R. 7(m), Movant states that, on December 18, 2019, Movant
discussed by telephone with Mr. Bannon's counsel the relief requested in this motion, and Mr.

---

[1]     The subject Subpoena is attached hereto as Ex. A and did not request the production of
documents.

[2]     Mr. Bannon's counsel agreed to this date as a "placeholder" because counsel expected motion
practice to be conducted concerning the deposition.  The subject deposition notice is attached hereto as
Ex. B.

Bannon opposes the relief.  Movant also certifies discussing the Bannon deposition with his counsel by telephone on November 18, 2019 and November 21, 2019 and exchanging in excess of 20 written communications with Mr. Bannon's counsel concerning the deposition from November 21, 2019 to December 18, 2019, select of which are attached hereto as Ex. C.  Finally, Movant and Mr. Bannon had a lengthy conference with the issuing court on December 13, 2019. Over Mr. Bannon's objections, the issuing court ordered the Bannon deposition be taken no later than January 10, 2020 as a limited-purpose reopening of the discovery period that closed November 29, 2019 in the underlying case.

## THE UNDERLYING CASE

This case involves fraud and contract-based claims and counterclaims surrounding a research services agreement that Movant entered into in January 2018 with Plaintiff/ Counterclaim Defendant Eastern Profit Corp. Ltd. ("Eastern Profit"). Strategic Vision has alleged that Eastern Profit is a shell entity existing solely to represent the interests of Guo Weingui ("Guo"), a Chinese national living in the United States.  Guo himself negotiated the contract, under which Strategic Vision would serve as a research consultant for a fixed period regarding a number of individuals that Guo described as Chinese Communist Party ("CCP") members or agents.  Guo represented, Strategic Vision understood, that its services would aid Guo's advertised efforts as a Chinese dissident to foster regime change in China by exposing CCP and government corruption.

Guo's representations to Strategic Vision seemed reliable at the time the contract was entered, but as Strategic Vision has alleged, Guo was not who he said he was, and did not

2

actually intend to use the fruits of the contract to undermine the CCP.[3] To prove that Guo's claim

to be a dissident was false, and that Guo has acted in accord with CCP initiatives, Strategic

Vision will rely on at least the following facts.

**First**, since 2017, Guo has claimed that he has not taken funds from Hong Kong or the

Mainland, and in this case, his entity, Eastern Profit, claims that dissident status makes funds

from those sources unavailable. Yet Guo openly funds many or all of his projects from a Hong

Kong entity, ACA, which is nominally controlled by William Je, a supposed dissident who is

actually tied to the PRC (and the CCP, through a so-called patriotic association). This may also

include Stephen K. Bannon's recently-reported million dollar payments from the Guo-controlled

media group on whose programs Bannon frequently appears alongside Guo.

**Second**, in various recordings and as recently as August 2017, Guo professed his loyalty

to senior CCP leadership, including General Secretary Xi Jinping, and asked for instructions on

what he should do and say in the United States. This came shortly before Guo began representing

to Strategic Vision that he was a dissident. It also came shortly before Stephen K. Bannon met

privately for three hours in Beijing with Wang Qishan, Xi's top ally and the man Guo publicly

claims to be his nemesis, and shortly before Bannon reported on that trip to Guo.

---

[3] Based on these circumstances, Strategic Vision has asserted Counterclaims for fraud
and breach of contract.  Strategic's Counterclaim I, for fraud, alleges Guo's material
representations that he was a dissident and that he would use Strategic's research to undermine
the Chinese government and Communist Party induced Strategic to enter the contract and were
false.  Strategic alleges that all of Guo's false representations were chargeable to Eastern Profit
because he controlled it.  In its responsive pleading, Eastern Profit has admitted "that Eastern
authorized Guo to communicate with Strategic Vision on Eastern's behalf concerning the
Agreement, that Guo's representations to, and interactions with, Strategic Vision concerning the
Agreement are binding upon Eastern, and that Eastern has not repudiated any such
representations or interactions."  (ECF 142, underlying case, p. 2, ¶ 4)

**Third**, since 2017, Guo has engaged in a pattern of surreptitiously advancing Beijing's interests in the U.S. by attacking the dissident community and attempting to infiltrate the U.S. foreign policy establishment, especially those known as "China hawks." As Strategic Vision pled in its Counterclaim, Bannon has participated in this conduct in this very case: he accepted access to the then-confidential deposition transcript of Michael Waller, a key Strategic Vision leader and witness, and then conveyed threats on behalf of Guo to Waller's employer.

As Strategic Vision alleged in its Counterclaim (ECF 114), Bannon allowed himself to become central to Guo's influence campaign in the United States. Early in President Donald Trump's administration, Guo had advertised his origin story and public persona using his Twitter and YouTube channels and conservative media such as Politico. Guo also cultivated friends in the White House. For his part, Mr. Bannon has publicly touted his role in a decision not to deport Guo to China.[4] In August 2017, days after Mr. Bannon left the White House and returned to Breitbart.com, the outlet began actively promoting Guo's cause. Shortly thereafter, in the summer of 2017, Bannon returned to Breitbart, and just a few weeks later, Bannon traveled to Hong Kong, Beijing, and Abu Dhabi, reporting on the trip to Guo Wengui in early October. The Beijing trip involved an unusual 3-hour visit with Wang Qishan, the senior CCP and PRC official Guo publicly claims is his arch-enemy, and came just after Guo had penned a letter to Chinese officials asking for "instructions" on what to do and say in the United States.

Mr. Bannon, then, is expected to have information on Guo's contacts with Chinese officials in the fall of 2017 (when Mr. Bannon traveled to Beijing), Guo's U.S. litigation and publicity campaign in 2017-2019 and its effect on Chinese dissidents and China hawks in the United States, and the source of payments used to fund Guo's operation from overseas.

---

[4] See https://www.nytimes.com/2018/12/04/business/stephen-bannon-guo-wengui-china.html

Mr. Bannon also has been involved in Guo's intimidation tactics against witnesses for Strategic Vision. As alleged in the Counterclaims, Mr. Bannon conveyed threats to the colleagues and employer of J. Michael Waller, who negotiated and worked on the research agreement for Strategic Vision, to interfere with Mr. Waller's role in discovery. As referenced in Strategic Vision's Counterclaims, ECF 127, ¶ 84, Mr. Bannon delivered Guo's threats to Mr. Waller's colleagues at the Committee on the Present Danger: China, who separately employ Mr. Waller in a foreign policy-focused nonprofit. Mr. Bannon told Mr. Waller's colleagues that Mr. Waller should be removed from the Committee, and said that Guo, who had "more money than God," would personally sue Mr. Waller (a threat that soon thereafter materialized in the form of a $50 million defamation claim that is still pending). Mr. Bannon also told Mr. Waller's employers that he had somehow accessed and read Mr. Waller's confidential deposition in this case—access that could only have come from Guo.

## EVENTS CONCERNING THE SUBPOENA AT ISSUE

Under Fed. R. Civ. P. 45, a subpoena for deposition testimony "must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). On November 8, 2019, Movant issued the subject Rule 45 subpoena to Mr. Bannon for a deposition in Washington, D.C. on November 22, 2019 (Ex. A hereto). This was after Movant had issued two earlier Rule 45 subpoenas to Mr. Bannon (one on September 25, 2019 and one on October 11, 2019) but was unable to serve them by their respective return dates because of difficulty reaching him. However, on November 14, 2019, Mr. Bannon was personally served with the subject subpoena outside his residence. (Exs. D hereto, Returns of Service)

Despite being personally served, on November 22, 2019, Mr. Bannon did not appear for the deposition. A record of his non-appearance is attached as Ex. E. Nor did Mr. Bannon file

any type of action in this court or the issuing court for relief from the subpoena. Without the protection of an order allowing him not to appear, Mr. Bannon thus disregarded the subpoena, and this was even though his counsel had contacted Strategic Vision twice during the week of the deposition to acknowledge it and discuss anticipated questions by Strategic Vision. Mr. Bannon's expressed concern regarding the deposition was that he needed more time to prepare. That communication came less than 24 hours before the deposition was to occur (counsel's communication is attached hereto as Ex. F), and it was easily resolved--Mr. Bannon's counsel provided the date of December 5, 2019 for Mr. Bannon to be deposed: "We are happy to discuss the conditions for a potential deposition of Mr. Bannon on December 5.").

However, after Mr. Bannon's non-appearance forced Strategic Vision to seek relief from the issuing court to depose him after the November 29, 2019 close of discovery, Mr. Bannon filed a 10-page opposition in the issuing court, arguing that discovery had closed. From a non-party, this concern was wholly misplaced, and the issuing court rejected it. The issuing court determined what it found to be properly before it, including that Movant's attempts to serve Mr. Bannon were timely, diligent, and ultimately successful (Mr. Bannon does not contest service of the subject subpoena),[5] that the deposition was noticed for a date within the discovery period, that Mr. Bannon did not appear as noticed, and that the deposition should be taken by January 10, 2020 absent a contrary order from the compliance court.

The issuing court also directed a deadline of January 10, 2020 for the deposition and instructed Mr. Bannon's counsel to provide a date for the deposition immediately. Only after repeated attempts to obtain a date (including three telephone calls arranged for and then cancelled by Mr. Bannon's counsel) did Mr. Bannon's counsel finally agree on December 18th to

---

[5]    From September 25, 2019 to November 14, 2019, Strategic Vision made eleven separate attempts to personally serve Mr. Bannon with a deposition subpoena, employing three different process servers.

a "placeholder" of January 10th. Thus, the deposition presents no new or unexpected issues for Mr. Bannon; it has been the subject of extensive motion practice in the issuing court, including submissions on November 27, 2019, December 6, 2019, December 11, 2019, and December 12, 2019 and an extensive conference with the issuing court on December 13, 2019.

## MR. BANNON SHOULD BE COMPELLED TO APPEAR

Under Rule 45, if the subpoena's recipient does not comply, "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court— may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." (Fed. R. Civ. P. 45(g) (entitled "Contempt"). Relief also is available under Rule 37 as a motion to compel discovery from a non-party. *See* Fed. R. Civ. P. 37(a)(2), (a)(3)(B)(i) and (b)(1). *See HT S.R.L. v. Velasco*, 125 F. Supp.3d 211, 220-21 (D. D.C. 2015). Strategic Vision thus seeks an order of contempt against Mr. Bannon as an alternative to relief issuing under Rule 37(a)(3)(B)(i) and Rule 37(b)(1) and, in either case, an order compelling him to appear as noticed on January 10, 2020 and for Strategic Vision's reasonable attorneys' fees and costs.

## ANTICIPATED AREAS OF TESTIMONY FROM MR. BANNON

Strategic Vision bears no burden to establish the discoverability of Mr. Bannon's testimony but can easily demonstrate it. First, Mr. Bannon is a resident of the District of Columbia and was duly served with a subpoena to give deposition testimony there. Second, the issuing court has allowed the Bannon deposition to be taken outside of the discovery period, after finding that Strategic Vision was diligent to obtain the deposition prior to the close of discovery and overruling any objection to the deposition lodged by Strategic Vision's opposing party, Eastern Profit.

Third, Mr. Bannon possesses critical information.  Discovery is proper into Mr. Bannon's trip to meet with two high-ranking Chinese and Emirati officials known to Guo, and with whom Guo would have had an urgent need to communicate in the fall of 2017 shortly after Guo made a written pledge of support to Chinese leaders and shortly before he engaged with Strategic Vision under the contrary position that he was a true dissident of China.  In mid-September 2017, Mr. Bannon (now, as a private citizen) travelled to Hong Kong, where a Chinese state-owned brokerage and investment group—the nation's largest—paid him to give what the Financial Times called a "closed door" speech.  In that speech, Mr. Bannon praised Xi Jinping, stating that Xi is "just like President Trump."[6]  From there, Mr. Bannon traveled to Beijing to visit for 3 hours with Wang Qishan, the senior CCP and PRC official Guo was contemporaneously claiming was his arch-enemy.  The Wang meeting is important because it came just a few weeks after Guo wrote to top Chinese officials pledging his loyalty, promising to speak on behalf of China's interests in the U.S. without "crossing the red line," and asking for "detailed instructions."  Wang Qishan, who Guo claims is his arch-enemy, was already a member of the standing committee of the Politburo and soon to be the number 2 official in China; he would certainly have been in a position to approve and convey the regime's response to Guo's letter.

But despite many requests in this case, including to Guo, there is little evidence regarding what the response was, who gave it, and when it was conveyed.  There is reason to believe Mr. Bannon knows.  Another witness has testified that Mr. Bannon discussed his Wang Qishan meeting with Mr. Guo in early October 2017.  Although Mr. Bannon has publicly stated that the meeting was to discuss "economic nationalism," a colleague of his has testified in this case that

---

[6] Mr. Bannon's praise for Xi markedly contrasted with his statement to the New York Times, published several days before, in which he compared modern-day China under Xi to prewar 1930s Nazi Germany.

Mr. Bannon would not explain to the witness what was actually discussed, and that this refusal to provide details was unusual for Mr. Bannon.  Mr. Bannon departed Beijing for Abu Dhabi in the United Arab Emirates for a visit with Crown Prince Mohammed bin Zayed.  In 2015, Guo had convinced the royal family to invest $3 billion in ACA Capital under a failed scheme to invest in a Mainland-based entity.  Mr. Bannon would have remembered discussions a few months earlier in the White House involving a purported effort to extradite Mr. Guo to the UAE, which would then exchange Guo with the Chinese in return for a payment.

In short, it is reasonable to believe that Bannon's trip involved communications with Mr. Wang and UAE leadership on behalf of Guo because (i) Guo had much to discuss with each party and (ii) Bannon reported on his trip to Guo shortly after it was completed.

Mr. Bannon's relationship with Guo only deepened after this trip.  By October 2017, Mr. Bannon himself had begun to speak publicly on behalf of Guo.  Discovery in the underlying case and public reports show that Mr. Bannon is being paid no less than $1 million per year by Saraca Media Group, a Guo controlled entity that uses the name "Guo Media." (Guo denies owning or knowing who owns the entity, but Strategic Vision will show that Guo Media is Guo's main propaganda arm in the U.S.). Guo has directed payments to or on behalf of other entities he claims not to control (including Plaintiff Eastern Profit) from ACA, a Hong Kong-based entity that (i) should not be able to dispense payments to Guo's causes if his dissident story is correct; and (ii) in any event, is controlled by William Je, a man who has now been revealed to have extensive Mainland ties. Establishing the actual source of Mr. Bannon's payments may show that he, too, is being paid by ACA—further indicating that Mr. Guo's claim to be a dissident without access to Mainland or Hong Kong-tied funds is incorrect.

Finally, as noted above, Mr. Bannon should be able to testify to Mr. Guo's influence

operations in the United States, including his efforts to threaten dissidents and their U.S.

supporters. Mr. Bannon is no mere observer, having delivered Guo's threats directly to the

employer of Strategic Vision leader (and witness) J. Michael Waller, after gaining access to his

deposition transcript in this case.

## MR. BANNON DID NOT TIMELY MOVE FOR RELIEF FROM THE SUBPOENA

Mr. Bannon did not timely move for relief from the subpoena. Its return date was

November 22, 2019 following personal service on November 14, 2019. As this Court held in *HT*

*S.R.L. v. Velasco*:

> Pursuant to Fed. R. Civ. P. 45(d)(3), the court where compliance is
> required may quash or modify a subpoena once a party "timely" moves to
> quash or modify. Generally, courts have interpreted "timely" as "within
> the time set in the subpoena for compliance." *U.S. ex rel. Pogue v.*
> *Diabetes Treatment Centers of America, Inc.,* 238 F.Supp.2d 270, 278,
> 278 n. 6 (D.D.C.2002) (citing *Innomed Labs, LLC v. Alza Corp.,* 211
> F.R.D. 237, 240 (S.D.N.Y.2002) ("it is reasonable to assume that the
> motion to quash should be brought before the noticed date of the
> scheduled deposition")) (agreeing that "timely" generally indicates
> "within the time set in the subpoena for compliance" but recognizing that
> "the time for compliance could be so small that it would not even permit
> time to file a motion to quash"). Motions to quash filed a significant
> amount of time after a subpoena's compliance deadline are untimely.

125 F. Supp.3d at 229 (overruled on inapplicable grounds). *See also Solargen Elec. Motor Car.*

*Corp. v. American Motors Corp.*, 506 F. Supp. 546, 552 (N.D. N.Y. 1981) ("A deponent [] may

seek a protective order from the court ... The burden then rests upon the objecting witness to set

forth grounds for the issuance of a protective order, such as the existence of a privilege.")

(emphasis added); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-CV-20953, 2008

WL 1995298, at *2 (E.D. Pa. May 5, 2008) (citing cases, which note that motions to quash are

untimely even just two days after compliance date and that such motions should generally be

brought before deposition date noticed in the subpoena); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D. N.Y. 2002) ("[I]t is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition."); *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 350 (W.D. Va. 1999) (assurance of compliance with subpoena and delayed motion to quash were factors in enforcing compliance); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 656 F. Supp. 830, 837 (N.D. Ill. 1987) (motion to quash depositions were untimely when filed after deposition date and motions to compel were filed).

As of the date of this motion, Mr. Bannon has sought no relief from the Court. His objections are now ineffective.

Non-parties indeed must respond to Rule 45 subpoenas directing testimony ad testificandum, meaning that the service of the subpoena itself commands testimony without further order of the Court. In *Solargen*, the court rebuked two reporters who refused to appear at their depositions, finding that they should have appeared at the deposition to assert the privileges they invoked to particular questions. To find otherwise "would go against the duty 'which the citizen owes his government . . . to support the administration of justice by . . . giving his testimony whenever he is properly summoned." 506 F. Supp. at 552. This is confirmed by the plain language of Rule 45. As to a subpoena for documents, a non-party can submit a timely objection to the party issuing the subpoena and then it is required of the issuing party to give notice to the non-party and move the Court for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i).

Rule 45 contains no similar provision for testimony commanded by a subpoena, and cases like *Solargen* hold that the "[t]he burden then rests upon the objecting witness" to obtain relief from the Court in advance of a deposition. 506 F. Supp. at 552; *see also Jones v. Hirschfeld*, 219

F.R.D. 71, 75 (S.D. N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant."). Accordingly, Mr. Bannon cannot simply fail to appear for his deposition. As of the date of this motion, Mr. Bannon has sought no relief from the Court. His objections are now ineffective.

### MOVANT REQUESTS EXPEDITED BRIEFING ON THIS MOTION

Movant requests expedited briefing and consideration of this Motion to Compel, which is necessary for the parties to comply with the deadlines set by the issuing court and to resolve the outstanding discovery issues before the dispositive motion deadline in the underlying action.

The standard briefing schedule under D.D.C.L.R. 47(b) takes three weeks to complete—14 days for the response and 7 additional days for the reply. Under that schedule, Strategic Vision's Motion to Compel would not be ripe until January 8, 2019. Accordingly, Strategic Vision requests that the response to the Motion to Compel be due one week after filing, on Thursday, December 26, 2019, and the reply be due December 31, 2019.[7]

The standard three-week briefing time is unnecessary given the exceptional circumstances presented in this matter, including the short time allowed by the tight schedule of the underlying case. Moreover, the parties have already presented extensive briefing on these issues before the issuing court, *see* Motion to Transfer, Ex. A., filed contemporaneously herewith, and the issuing court is "knee-deep in the nuances of the underlying litigation." *In re Braden*, 344 F. Supp. 3d 83, 94 (D.D.C. 2018).

---

[7] Pursuant to D.D.C.L.R. 7.1(m), counsel for Strategic Vision has conferred with counsel for Mr. Bannon concerning this Motion, and counsel for Mr. Bannon opposes an expedited briefing schedule—instead proposing Movant wait to respond to a future motion to quash to be filed next week, with reply briefing not scheduled until January 10, 2020.

The standard briefing schedule is unnecessary here, as the parties have filed numerous motions related to the deposition of Bannon before the issuing Court, including a motion for leave to depose Bannon filed by Strategic on December 6, 2019, and a ten-page motion in response filed by Bannon's counsel on December 11, 2019, objecting to the deposition.  Case No.  1:18-cv-02185-JGK-DCF, Dkt. Nos. 212, 218, 219, 220. These motions also addressed in detail various arguments Bannon's counsel said it would make on a future (but still unfiled) motion to quash.

The tight deadline necessitating expedited briefing and consideration of the Motion to Compel arises from the schedule of the underlying litigation. Discovery closed November 29, 2019, yet the issuing court held a December 13, 2019 phone conference in which it ordered discovery reopened for purposes of Bannon's deposition. The Court also ordered the parties to confer, prosecute any motion practice, and complete the deposition by January 10, 2020. Judge John G. Koeltl (presiding over the case) has called the parties to a January 14, 2020 pre-motion conference; summary judgment motions are likely due on January 31, 2020; and trial would be in the spring. Because of the exigencies of time, the Court specifically instructed counsel for Bannon to provide Strategic with dates for the deposition—even if one or both parties contemplated filing motions to quash or compel in this Court. This schedule contemplated that potential motion practice would occur on an expedited basis, with an eye to having a ruling, either compelling an appearance or quashing the subpoena, before the new Bannon deposition deadline of January 10.

Movant's desire to resolve the instant dispute within the time period ordered by the issuing court has been obstructed by the continued delay and conduct of Bannon's counsel.

Expedited briefing and consideration is necessary to resolve this issue within the underlying litigation's exigent timeframe.

## <u>CONCLUSION</u>

Movant seeks the relief described above and, as allowed under Rule 37, its reasonable legal fees and expenses to bring this matter before the Court.

Dated December 18, 2019

Respectfully submitted,

GRAVES GARRETT LLC

Edward D. Greim, D.D.C. Bar #MO008
Lucinda H. Luetkemeyer (*pro hac vice*)
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
lluetkemeyer@gravesgarrett.com
ATTORNEYS FOR MOVANT AND
DEFENDANT/COUNTERCLAIM PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2019, the foregoing was served via electronic mail

to all counsel of record, including:

Alexander Benjamin Spiro
Quinn Emanuel Urquhart & Sullivan (NYC)
51 Madison Avenue
New York, NY 10010
212-849-7000
Fax: 212-849-7100
alexspiro@quinnemanuel.com


Allison L McGuire
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, DC 20001
202-538-8272
allisonmcguire@quinnemanuel.com

_____
Attorney for Movant